UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| DEBORAH CRAWFORD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 11-226-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **& ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Deborah Crawford brought this action pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706 to challenge a final decision of the Defendant, the Commissioner of Social Security ("Commissioner"), which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Consistent with the Court's practice and pursuant to 28 U.S.C. § 626(b)(1), this matter was referred to United States Magistrate Judge Edward B. Atkins for the issuance of a Report and Recommendation ("R&R") containing the proposed findings and recommendations. [R. 15].

The R&R concludes that the decision of the administrative law judge ("ALJ") was supported by substantial evidence. [*Id.* at 20]. On July 2, 2012, Crawford filed her objections to the R&R. [R. 17]. First, Crawford disagrees with the R&R's conclusion that the ALJ gave "good reasons" for declining to accept the opinion of her treating family physician, Dr. Karen Saylor. Second, she objects to the finding that the Appeals Council adequately considered the mental aspect of her claim, even though the ALJ did not. Finally, Crawford takes issue with the

ALJ's reasoning in declining to give her subjective complaints full credibility. The Commissioner has filed a response. [R. 18].

This Court must make a *de novo* determination of those portions of the R&R to which objections are made. 28 U.S.C. § 636(b)(1)(c).

## I.

The ALJ's treatment of the opinion of Dr. Saylor, a treating source, is not supported by substantial evidence. The Commissioner's regulations provide that:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2). The other factors which must be considered when the treating source opinion is not given controlling weight include the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with other evidence in the record, and whether the treating source is a specialist. 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), d(3)-d(5); 416.927(d)(2)(i)-(ii), d(3)-d(5).

The regulations also contain a clear procedural requirement that the ALJ must give "good reasons" for discounting a treating physician's opinion, specific enough "to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion

and the reasons for that weight." 20 C.F.R. §§ 1527(d)(2), 416.927(d)(2); Social Security Ruling ("SSR") 96-2, at *5. The purpose of the reason-giving requirement is to allow "claimants [to] understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (citation and internal quotation marks omitted). In addition, the requirement "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* Failure to follow the procedural requirement denotes a lack of substantial evidence, even where the ALJ's conclusion may otherwise be justified on the record. *Id.* at 546. "To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability to violate the regulation with impunity and render the protections rendered therein illusory." *Id.*

Here, the ALJ explained his rejection of Dr. Saylor's opinion as follows:

> As for the opinion evidence, the Administrative Law Judge finds the assessment by the claimant's treating physician, Dr. Karen Saylor, to be inconsistent with the evidence of record. She found the claimant's symptoms of fibromyalgia to be moderate to severe; however, her treatment notes show the claimant has been treated conservatively with Flexeril and Lyrica. In addition, her notes do not even mention tenderness at trigger point locations. The reported activities of daily living are inconsistent with Dr. Saylor's assessment. Therefore, the Administrative Law Judge grants little weight to the assessment of Dr. Saylor.

[Tr. 20]. Both parties concede that Dr. Saylor's office note of March 20, 2008 refers to "Pressure pts c[onsistent] w[ith] Fibromyalgia." [Tr. 353]. As the magistrate noted, it is undisputed that Crawford suffers from fibromyalgia, which the ALJ found to be a "severe" impairment. [Tr. 13].

However, after conceding that Crawford is severely impaired by fibromyalgia, the magistrate shifts to questioning the validity of the diagnosis by noting that only one of Dr. Saylor's office notes mentions pressure points consistent with fibromyalgia, and suggests that even this note was inconsistent with Dr. Saylor's indication on the RFC form that there were "11 or more pressure points." [R. 15 at 9-10]. Apart from the fact that there is no inconsistency between indicating an unspecified number of pressure points and "more than 11," the magistrate's conclusion that it was "reasonable that the ALJ would find it problematic that only one mention of trigger point pressure was made in a patient with severe "fibromyalgia" not only erroneously presumes that the ALJ engaged in such reasoning, it also circles back to questioning the validity of the diagnosis—which the magistrate had previously said was "undisputed." [Cf. R. 15 at 7, 10]. It is important to keep in mind that, in evaluating the procedural safeguards of § 1527(d), the issue is not whether it is possible to salvage a justification for the ALJ's conclusions after the fact. "A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion, and, thus, a different outcome on remand is unlikely." *Wilson*, 378 F.3d at 546. Overlooking the single most important piece of evidence in the treating physician's notes which supports the restrictions the ALJ was rejecting cannot be characterized as anything other than a serious procedural flaw. As the Sixth Circuit has noted, adopting an assessment contrary to a treating physician's opinion "without even addressing her involvement . . . transgressed § 1527(d)(2) even beyond the violations in *Hall* [*v. Comm'r of Soc. Sec.*, 148 Fed. Appx. 456, 461-62 (6th Cir 2005), *Nelson* [*v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 472 (6th Cir. 2006)], and *Wilson*, where the treating source was at least mentioned. This fact alone

counsels strongly in favor of a remand." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 748 (6th Cir. 2007). While *Bowen* specifically concerned a treating physician opinion as well as supporting evidence, it illustrates the importance of the ALJ providing a rationale for his decision that displays consideration of key evidence from the treating source. Therefore, this basis for the rejection of the treating physician opinion fails, and cannot be excused on the basis of what the ALJ might have concluded had he discussed it.

The magistrate also accepts the ALJ's implication that being "treated conservatively with Flexeril and Lyrica" by Dr. Saylor was inconsistent with her finding of moderate to severe fibromyalgia. However, "conservative" treatment is the norm for fibromyalgia. *See*, *e.g.*, *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852 at *22 (6th Cir. 2011) (rejecting "absence of more aggressive treatment" as justification for discounting a treating source opinion because "more 'aggressive' treatment is not recommended for fibromyalgia patients"). The ALJ had noted that at one point Crawford had been taking the pain medication Lorcet, and testified that she had stopped taking it because of side effects, but told her psychiatrist, Dr. Adam Wooten, that her pain medications had been stolen by a friend working on her home after a fire, causing her family doctor to stop prescribing them. [Tr. 19, 46, 531].

The ALJ cited this discrepancy as a basis for questioning Crawford's credibility, not as a basis for questioning the treating physician's restrictions. Assuming, without deciding, that Dr. Saylor discontinued prescribing a narcotic medication because she suspected Crawford was selling her medication, the fact remains that she thought her patient's condition was severe enough to warrant the prescription of such medication. This is not a factor that detracts from the

weight accorded to Dr. Saylor's opinion, which was given well after the discontinuation of Lorcet; instead, it bolsters the view that Dr. Saylor thought Crawford's condition was serious.

Third, the ALJ cited Crawford's daily activities as inconsistent with Dr. Saylor's restrictions, summarizing them as follows:

> [Plaintiff] is able to care for her own personal hygiene but does not do it often. She is able to prepare simple meals and grocery shop with her aunt every couple of weeks. She leaves her television on 24 hours a day. She does not have cable. She just watches DVDs over and over. [Plaintiff] will sometimes read books that she has gotten from the library or play games on the computer. Her aunt invites her to dinner about once a week. Her mother and uncle also visit but not on a regular basis. The claimant does not have a telephone but occasionally borrows her neighbor's telephone to make calls. She has a friend that visits about once a month . . . . [Plaintiff] has no hobbies but will occasionally work a crossword puzzle. She reports that she can walk a couple blocks on a flat, smooth surface; stand 30 to 60 minutes; lift ten pounds with pain; and sit for 60 minutes. She can bend and stoop but has a hard time getting back up. She checks her blood sugar several times a day . . . .

[Tr. 19]. While it is proper to consider them, it is not clear how this limited roster of activities is comparable to typical work activities, which are defined as "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1521(b), 921( b), *cited in Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 n. 6 (6th Cir. 2007). The ALJ makes a conclusory statement that the activities are inconsistent with an inability to work, and even that they were "not limited to the extent one would expect." [Tr. 19]. But a person who can perform minimal self care, prepare simple meals, and rarely leave the house for shopping and socializing is similar to the claimant in *Rogers*, about whom the Sixth Circuit said that "these somewhat minimal daily functions are not comparable to typical work activities." *Rogers*, 486 F.3d at 248.

Only where a treating physician's opinion "is so patently deficient that the Commissioner could not possibly credit it" will the Court not reverse a case where the ALJ failed to observe the requirements for the weight given to a treating physician. *Wilson*, 378 F.3d at 547. Since Dr. Saylor's opinion is not patently deficient, the ALJ's inadequate rationale for rejecting it is fatal, and a remand is required for the ALJ to reconsider Crawford's RFC and properly analyze Dr. Saylor's opinion.

## II.

Although a remand will be required on the first issue, the Court will briefly address the plaintiff's other two assignments of error.

### A.

It is undisputed that the ALJ failed to discuss the opinion and residual functional capacity assessment ("RFC") given by Crawford's treating psychiatrist, Dr. Adam F. Wooten. [Tr. 466-8, 514-18, 531-32, 542]. Dr. Wooten provided office notes and stated in the RFC that Crawford was diagnosed with a bipolar disorder and marked her ability to understand, remember, and carry out instructions as "not at this time." [Tr. 466-68]. She was unable to travel in unfamiliar places, use public transportation, unable to set realistic goals, or make plans independently. [*Id.*]. She had mood swings, mania, depression, and memory difficulty and was "temporarily totally disabled." [*Id.*].

The ALJ's failure to mention Dr. Wooten's opinion would ordinarily be automatic grounds for a remand. *Bowen*, 748 F.3d at 747-49. Crawford raised the issue in her motion for summary judgment. [R. 10]. The Commissioner responded by noting that the Appeals Council had addressed the ALJ's omission in declining Crawford's request for review. [Tr. 2]. The

magistrate judge accepted the Commissioner's argument that the Appeals Council discussion of Dr. Wooten was substantial evidence to support the Commissioner's decision. [R. 15 at 13-15]. In objections to the R&R, Crawford asserts that the Appeals Council's evaluation does not excuse the ALJ's "glaring error." The Commissioner responds, first, that Crawford waived any challenge to the Appeals Council's evaluation by failing to raise the issue in her principal brief, and second, that the Appeals Council correctly dismissed Dr. Wooten's opinion as conclusory and as unsupported by his office notes. [R. 18 at 5-7].

Longstanding Sixth Circuit precedent establishes that the Court can only review the final decision of the Commissioner, as specified in 42 U.S.C. § 405(g). *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). If the Appeals Council accepts a claimant's request for review and issues a new decision, the issue for review is whether the Appeals Council's findings, not the ALJ's, are supported by substantial evidence. *Mullen v. Bowen*, 800 F.2d 535, 546 (6th Cir. 1986) (en banc).

It is equally well established that where the Appeals Council considers new evidence but declines to review a claimant's application on the merits, the ALJ's opinion is the final decision of the Commissioner. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). This is true even where the Appeals Council considers new evidence, but still formally declines to review the ALJ's decision. *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993). In such cases, the Court may consider the new evidence only for the limited purposes of remanding the case for further administrative proceedings where the plaintiff shows the new evidence is new and material, and that there was good cause for failing to present it before the ALJ. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

In the present case, the Appeals Council did decline to review the ALJ's decision. [Tr. 1-4]. As a result, Crawford's implicit position that this appeal concerns the ALJ's decision, and not that of the Appeals Council, is correct. It follows that the ALJ's failure to discuss Dr. Wooten's opinion is a reversible error. Since the case is being remanded on other grounds, the Commissioner can take the opportunity to issue a new, final decision, taking Dr. Wooten's opinion into account.[1]

**B.**

Finally, Crawford's argument that the ALJ performed an improper credibility assessment merits a brief discussion. As Crawford notes, the R&R actually held that her reported daily activities, previously described, did not provide evidence of her ability to perform work, as found by the ALJ. [R. 15 at 19]. However, the magistrate found that other factors, including her favorable response to medication for her bipolar disorder, her lack of treatment for her herniated cervical disc and degenerative left shoulder, and her inconsistent testimony at the administrative hearing regarding her Lorcet prescription, were sufficient to support the ALJ's conclusion that Crawford was less than completely credible. [*Id.* at 15-19].

The ALJ correctly followed the procedures set out in 20 C.F.R. §§ 404.1529 and 416.929, which provide, in part, that "statements about your pain or other symptoms will not alone establish you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including

---

[1] The Court notes in passing that the Appeals Council discussed Dr. Wooten's conclusory opinion that Crawford was temporarily totally disabled, but did not mention the portions of his report that addressed specific work-related abilities. There is a distinction between the manner in which the two types of opinion are weighed. 20 C.F.R. § 404.1527(e)(1). By ignoring Dr. Wooten's specific restrictions, the Appeals Council failed to conduct a proper analysis of the treating psychiatrist's opinion.

statements about the intensity and persistence of your pain and other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled . . . ."

The Sixth Circuit enunciated the regulatory standards in a more succinct form in *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847.

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

[*Id.* at 553]. The ALJ found that although Crawford met the first prong of the *Duncan* test, the evidence did not support her allegations regarding the intensity and persistence of her symptoms. [Tr. 19].

Part of the reasons given by Crawford for disagreeing with the ALJ's conclusions are duplicates of her argument that the ALJ gave improper weight to the treating sources, Drs. Saylor and Wooten. As previously described, these objections are meritorious. She challenges the ALJ's assertion that Crawford "has not seen a neurosurgeon or an orthopedist and surgery has not been recommended" [Tr. 19], because she testified that she had seen a Dr. Einbecker, a neurosurgeon, in 2002, and Dr. Lockstadt, an orthopedist, at some other point. [Tr. 44-45]. The magistrate correctly noted that there was no other evidence of treatment by Dr. Lockstadt, or indication of when it occurred, and any treatment by Dr. Einbecker was too remote to be considered, since by Crawford's own testimony it occurred six years before her alleged onset date. [R. 15 at 18].

Dr. Saylor's nurse did recommend that Crawford be evaluated by a neurosurgeon in March, 2008, following an MRI showing a herniated cervical disc. [Tr. 368]. The magistrate noted that there was no evidence that Crawford did so. [R. 15 at 19]. Crawford asserts that it was erroneous to discount her credibility on this ground because she was unable to afford treatment. However, Crawford admitted that she continued to smoke. [Tr. 50]. The Sixth Circuit has taken judicial notice of the cost of smoking when weighing a claimant's assertion that he is unable to afford treatment. *Sias v. Sec'y of Health and Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988). While it is possible that treatment of her herniated disc might have ended up costing more than Crawford could afford, a reasonable fact-finder could have questioned her apparent unwillingness to at least let Dr. Saylor make an appointment for a neurosurgical consultation, especially in view of the fact that she had already been able to obtain an MRI.

The inconsistency between Crawford's testimony at the hearing about her Lorcet prescription and her statement to Dr. Wooten has already been discussed.Consequently, although not all of the ALJ's reasoning is apt, the Court finds the ALJ's credibility determination as a whole to be supported by substantial evidence.

### III.

In sum, having made a *de novo* determination, the Court finds that substantial evidence does not support the findings of the Commissioner, but the evidence does not support an immediate award of benefits. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows

1. The Plaintiff's Objections to the Magistrate Judge's Report and Recommendation [R. 15] are **SUSTAINED IN PART** and **OVERRULED IN PART**;

      2.      The Plaintiff's Motion for Summary Judgment [R. 10] is **GRANTED IN PART AND DENIED IN PART**;

      3.      The Defendant's Motion for Summary Judgment [R. 12] is **GRANTED IN PART AND DENIED IN PART**;

      4.      The ALJ's decision is **REVERSED AND REMANDED** for further proceedings consistent consistent with this opinion; and

      5.      A judgment will be entered contemporaneously forthwith.

This 28th day of September, 2012.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge